**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTHA CARROLL, individually,** | ) | |
| **and also on behalf of all similarly** | ) | |
| **situated persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:17-cv-01127-STA-egb** |
| | ) | |
| **TDS TELECOMMUNICATIONS** | ) | |
| **CORPORATION, TDS TELECOM** | ) | |
| **SERVICE CORPORATION, and** | ) | |
| **TENNESSEE TELEPHONE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Before the Court is the Motion to Dismiss (ECF No. 16) of Defendants TDS Telecommunications Corporation, TDS Telecom Service Corporation, and Tennessee Telephone Company. Defendants seek the dismissal of Plaintiff Martha Carroll's Second Amended Complaint (ECF 1-1), in which Plaintiff asserts both individual and class-action claims and over which the Court exercises diversity jurisdiction. Plaintiff's claims center around what is essentially an accusation of false advertising regarding Defendants' provision of "High-Speed Internet." Plaintiff claims that the quality of internet service she received could not be called high speed under the nature of the parties' agreement or any meaning of the phrase. But Defendants maintain that Plaintiff has failed to state any claim for which relief may be granted. The Court disagrees and finds that Plaintiff has plausibly alleged sufficient facts to support each claim. For reasons set forth below, Defendants' Motion is **DENIED**.

# I. BACKGROUND

## A. Allegations of the Complaint

The following allegations by Plaintiff are taken as fact for the purposes of this Motion. *See* Defendants' Notice of Removal, Ex. A, at 318–41, June 29, 2017, ECF No. 1-1 [hereinafter "State Court Record"]; *supra* Part II. Plaintiff's Second Amended Complaint refers to Defendants as a single entity ("TDS") that the Court will use interchangeably with Defendants. *See id.* at 318. The Court would further note that, although Plaintiff begins to veer towards conclusory language in some of the specific, claim-related allegations, such allegations are supported by the specific facts alleged in the general allegations and other count-specific allegations, all of which incorporated into the allegations made under each count of the Second Amended Complaint.

### 1. General Allegations

Plaintiff is an adult Tennessee citizen residing in Perry County, Tennessee. TDS is an internet provider that advertises and sells high-speed internet plans to customers in rural Tennessee. Upon enrolling in TDS's high-speed "Turbo Internet" plan, Plaintiff received correspondence from TDS based out of Madison, Wisconsin. Defendant TDS Telecommunications Corporation ("TDS Delaware") is a Delaware corporation with its principal place of business located in Madison, Wisconsin. Defendant TDS Telecom Service, LLC, ("TDS Iowa") is an Iowa limited liability company with a principal place of business in Madison, Wisconsin. Defendant Tennessee Telephone Company ("TTC") is a Tennessee company with a principal place of business in Madison, Wisconsin. TDS Delaware, TDS Iowa, and TTC all have the same address in Madison, Wisconsin. TDS Delaware is the parent

corporation of TDS Iowa. TDS Iowa provides administrative and support services to operating companies owned by TDS Delaware. TDS Iowa employs individuals who receive orders from customers, such as Plaintiff, when they order new services or make changes to their services. Most importantly, TDS Iowa hosts the internet site and publishes the advertisements that are at issue in this case. TTC operates the TDS infrastructure in Tennessee. TDS owns the internet site on which the high-speed internet plans are advertised. TDS also owns the trademark "TDS" that is used in connection with the advertisements. TDS Delaware, TDS Iowa, and TTC[1] have been involved in the drafting, formation, publishing, and all other aspects of the advertisements related to the Turbo Internet plan and have conducted their actions from the same address in Madison, Wisconsin.

TDS's high-speed internet plans include "Mach Internet," "Turbo Internet," "Express Internet," and "Lite Internet." For the Mach Internet plan, TDS has advertised the download speed as a range of 18 Megabits per second ("Mbps") to 25Mbps and the upload speed as a range of 2Mbps to 5Mbps. For the Turbo Internet plan, TDS has specifically advertised the plan as:

> Fast speed for typical users with multiple computers or Internet-connected devices.
>
> Get the speed you need to do what you want online. You'll be able to easily handle complex web pages, download large files, and upload larger files. Provides faster upload speed, too.

State Court Record, at 321. TDS claims that the Turbo Internet plan provides a range 8Mbps to 15Mbps and an upload speed of 768 Kilobits per second ("Kbps"). On a separate advertisement page, TDS expressly states that the Turbo Internet plan has the 8–15Mbps range. TDS's

---

[1] In reference to the aspects of the advertisements, Plaintiff lists TDS Delaware, TDS Iowa, *and TDS*. The Court is not sure whether Plaintiff meant to list TTC or simply use the umbrella term "TDS," but either would implicate TTC. The Court advises Plaintiff to clarify her intention here in the future.

advertisements have described the Turbo Internet plan as having "Faster uploads and downloads," being "Great for visiting sites like Netflix, YouTube, and Hulu," and having a "Superior connection [that] lets you stream Netflix Super HD." TDS's Express Internet plan is advertised as having a download speed range of 56Kbps to 5Mbps. And TDS's Lite Internet plan is advertised as having a download speed range of 56Kbps to 1Mbps. But TDS's services as provided to customers in Perry County, Tennessee, and elsewhere in rural Tennessee have fallen well short of the ranges advertised. TDS customers have complained of receiving only a 0.02Mbps (20 Kbps) download speed and having no ability to access sites such as Netflix, YouTube, or Hulu—contrary to the promises of TDS's advertisements. TDS has even admitted to complaining customers that the infrastructure simply cannot support the speeds advertised given certain capacity issues. TDS has acknowledged to complaining customers that it has been aware of these problems since at least 2013 and that there is currently no project in place to address the problems. Only after customers complain loudly enough has TDS offered any solutions for these deficiencies. But those solutions consisted of TDS trying to have customers upgrade their plans to purportedly higher speed plans despite knowing that the infrastructure problems would prevent customers from having those higher speeds or switching to a different source for internet such as subscribing to a different company or setting up a data hotspot with the customer's mobile phone.

As stated above, Plaintiff signed up for the Turbo Internet plan. She paid between $120 and $150 per month for TDS's internet and telephone package, which is a rate commensurate with the cost of a joint package containing high-speed internet service. But TDS has not provided Plaintiff with the high speed internet as advertised. Plaintiff has not experienced the advertised range of download speed or upload speed. Plaintiff's actual download speed was as

low as 0.02Mbps.  Plaintiff has not been able to access or enjoy sites such as Netflix, YouTube, or Hulu.  On multiple occasions, technicians came out to Plaintiff's house to try and fix the problems with her internet service.  But finally, TDS representatives admitted to Plaintiff or her family that infrastructure and other problems prevented TDS from ever being able to actually provide the high-speed internet that TDS advertised and for which Plaintiff had paid.

**2.      Specific Allegations of Count 1—Breach of Contract**

Plaintiff entered into a contract with TDS whereby TDS would provide high-speed internet in exchange for the monthly fee paid by Plaintiff and the class members.  TDS advertised specific high-speed internet ranges of internet access but never provided speeds within those ranges.  Further, the internet access could not be used for the specific activities (e.g., using Netflix, YouTube, or Hulu) advertised.  TDS has failed to provide the high-speed internet that it advertised and for which Plaintiff had contracted and paid for.  TDS was and knew it was incapable of providing the services that it advertised and for which Plaintiff and the class members contracted.  And subsequently, TDS wrongfully assessed early termination fees against Plaintiff and some class members given that TDS had previously breached the parties' agreement by failing to provide high-speed internet services.  Plaintiff and the class members have sustained damages including but not limited to modem and equipment charges, set-up fees and charges, monthly charges, costs associated with terminating the internet service for another Internet Service Provider, and early termination fees.

### 3.    Specific Allegations of Count 2—Violations of the WDTPA[2]

TDS or its agents sought to sell, distribute, or increase consumption of TDS's service of high-speed internet and related equipment to the public in rural Tennessee. TDS or its agents did so through its internet and other marketing channels. TDS or its agents intended to induce the public into a contract or obligation by offerings these services and related equipment. TDS or its agents advertised in both Tennessee and Wisconsin for these services and related equipment that contained announcements, statements and representations, or statements of fact that were and are untrue, deceptive, or misleading. TDS's false advertisements originated in Wisconsin and were published over the internet in both Wisconsin and Tennessee. TDS's actions include but are not limited to substituting services of inferior value or quality for the services advertised and that Plaintiff and the class members had purchased. TDS's deceptive trade practices have caused Plaintiff and the class members pecuniary damages, including but not limited to modem and equipment charges, set-up fees and charges, monthly charges, costs associated with terminating the internet service for another Internet Service Provider, and early termination fees.

### 4.    Specific Allegations of Count 3—Fraud

Defendants made material misrepresentations to Plaintiff and the class members, including but not limited to the statements that the purportedly high-speed internet plans would provide certain ranges of internet speeds and permit access to certain video streaming sites like Netflix despite the failure of TDS to provide such services. Not only were these statements false, but these statements were also made by TDS with the knowledge they were false because TDS knew their infrastructure and other problems could not support these internet speeds. Plaintiff

---

[2] Plaintiff brings a claim for a violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA") because she believes that Wisconsin law governs the contract between the parties.

and the class members relied on TDS's representations that it would provide high-speed internet access.  As a result of relying on these misrepresentations, Plaintiff and the class members have sustained damages including but not limited to modem and equipment charges, set-up fees and charges, monthly charges, costs associated with terminating the internet service for another Internet Service Provider, and early termination fees.

### 5.      Specific Allegations of Count 4—Unjust Enrichment

TDS promised certain internet services that it has failed to deliver.  Plaintiff and the class members paid monthly for those services that they did not receive.  And as result of those payments and others for different services, fees, and equipment, TDS has received a benefit from Plaintiff and the class members.

### 6.      Specific Allegations of Count 5—Civil Conspiracy

Each Defendant had a common design to accomplish an unlawful purpose or a lawful purpose by unlawful means through concerted action with the other Defendants.  TDS committed overt acts in furtherance of the conspiracy, including but not limited to falsely advertising hbigh-speed internet plans, charging customers for such plans, and covering up known infrastructure problems.  Due to such actions, Plaintiff and the class members have sustained damages including but not limited to modem and equipment charges, set-up fees and charges, monthly charges, costs associated with terminating the internet service for another Internet Service Provider, and early termination fees.

### 7. Injunctive Relief and Punitive Damages

Beyond incorporating previously stated facts, Plaintiff lists only legal arguments and conclusions under these Counts in her Second Amended Complaint.

### B. Procedural Posture

Plaintiff filed her original Complaint for Monetary Damages and Injunctive Relief against TDS Delaware and TDS Iowa on December 14, 2015 in the Circuit Court of Perry County, Tennessee. State Court Record, at 2. On February 8, 2016, Plaintiff amended her Complaint to include TTC as a defendant. *Id.* at 34. Defendants moved to dismiss Plaintiff's Amended Complaint on March 31, 2016. *Id.* at 223. Plaintiff then moved to amend her Amended Complaint on April 3, 2017. The parties consented to granting Plaintiff's Motion to Amend and denying Defendant's Motion to Dismiss without prejudice. *Id.* at 315. Plaintiff filed her Second Amended Complaint, the subject of the instant Motion, on June 9, 2017. *Id.* at 318. Defendants filed their Notice of Removal (ECF No. 1) on June 29, 2017. Defendants then filed this Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 16) on July 27, 2017. Plaintiff filed her Response (ECF No. 18) on August 24, 2017, to which Defendants filed their Reply (ECF No. 19) on September 7, 2017. The instant motion is therefore ripe for decision.

## II. STANDARD OF LAW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer*

*v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).  Legal conclusions and unwarranted factual inferences, however, need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).  Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.     ANALYSIS

### A.     Breach of Contract

Defendants argue that that Plaintiff cannot succeed on her breach of contract claim because she cannot show that Defendants failed to perform a term of the relevant contract.  The parties begin to argue over the terms of the contract, which State's law applies, and remedies, but these are all improper for the motion-to-dismiss stage of the litigation.  Plaintiff need only allege sufficient facts to support a breach of contract claim, and the Court finds that Plaintiff has done so.

The elements of a claim for breach of contract are (1) the existence of a contract, (2) breach of the contract, and (3) damages that flow from the breach.  *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996); *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (citation omitted).  A contract is an agreement between two or more parties that is legally enforceable.  Thus, in order for an agreement to transform into a contract, "it must [(1)] result from a meeting of the minds of the parties in mutual assent to the terms, . . . [(2)] be based upon a sufficient consideration . . . ."  *Higgins v. Oil, Chemical & Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (quoting *Johnson v. Central Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn. 1962)).  Consideration is "either a benefit to the . . . promis[or] or a detriment to[] or obligation upon the promise[e]."  *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999) (quoting *Univ. of Chattanooga v. Stansberry*, 9 Tenn. App. 341, 343 (Tenn. Ct. App. 1928)); *see also Foust v. Bd. of Publication*, 76 Tenn. 552, 554–55 (Tenn. 1881).  In other words, in exchange for a promise from one party, the other party promises to act, refrain from acting, alter a legal relationship, or to otherwise perform upon another promise.  *See Marshall Durbin Food Corp. v. Baker*, 909 So.

2d 1267, 1273 (Miss. Ct. App. 2005) (quoting *City of Starkville v. 4-County Electric Power Assoc.*, 819 So. 2d 1216, 1220 (Miss. 2002)).  Here, Plaintiff alleges that the parties entered into a contract for the provision of a specific, high-speed internet service:  the Turbo Internet plan.  In exchange for the promise of a specific service, Plaintiff alleges that she agreed to pay a monthly rate of $120 to $150.  Plaintiff has sufficiently pleaded that the parties entered into an agreement and that agreement was supported by an exchange of promises sufficient to satisfy the requirement of consideration.  Therefore, the Court finds that Plaintiff has sufficiently alleged the existence of a contract.

Plaintiff has also alleged that Defendants failed to provide the rate of internet speed that she bargained for.  "A breach of contract takes place when a party fails to perform according to the agreement."  *In re Gatlinburg Motel Enterprises*, 127 B.R. 814, 819 (Bankr. E.D. Tenn. 1991) (citations omitted); *see also* Restatement (Second) of Contracts § 235(2) ("When performance of a duty under a contract is due any non-performance is a breach.").  By pleading that Defendants have not provided the service as they promised in the contract, Plaintiff has made sufficient allegations to support that the contract was breached.

Under Tennessee law, damages for breach of contract are typically presumed.  *See Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publ'g Co.*, 298 S.W.2d 788, 795 (Tenn. Ct. App. 1956) (citation omitted).  But here, Plaintiff has alleged specific damages as the result of Defendants' purported breach, including various costs and fees associated with trying to obtain the speed of internet she was promised.  Thus, Plaintiff has satisfied the third requirement for a breach of contract claim.

Plaintiff has stated a claim for breach of contract and dismissal under Rule 12(b)(6) is inappropriate.  But nothing here prevents Defendants from raising their argument that Plaintiff cannot show that Defendants failed to perform at another stage of this litigation.

### B.     Wisconsin Deceptive Trade Practices Act

Defendants make three arguments as to why the Court should dismiss Plaintiff's Claim under the WDTPA:  first, Wisconsin law does not apply to this action; second, Plaintiff does not state a claim under the WDTPA because the WDPTA requires the advertisement relied on to be from Wisconsin and Plaintiff failed to plead as such; and third, Plaintiff has not pleaded her claims with particularity as required by the statute.

As to the first argument, the Court gathers that Plaintiff alleges that the contract requires the application of Wisconsin law.  Thus, the resolution of that issue is improper until there is a determination of what terms the contract includes.  This is a determination that cannot be made until the summary-judgment stage at the earliest unless the parties stipulate or otherwise agree to what the terms of the contract are.  Thus, the Court will not dismiss Plaintiff's WDTPA claim under Defendants' first argument.

Defendants' second argument is that Plaintiff failed to plead that she relied on any advertisement or representation from Wisconsin.  But the Court notes that Plaintiff specifically pleads in Paragraph 96 of her Second Amended Complaint that the advertisements she refers to originated in Wisconsin.  State Court Record, at 334.  Defendant argues that this is conclusory, but, in Plaintiff's other allegations, she refers to the content of these advertisements and states that she relied on them in deciding to enter into a contract with TDS.  *See id.* at 336.  More importantly, she alleges that all Defendants were involved in developing the advertisements and

that all Defendants work out of Madison, Wisconsin. *Id.* at 328. In later stages of the litigation, Plaintiff will have the burden of proving these allegations, but at this stage, Plaintiff's Second Amended Complaint is sufficient.

In support of their third argument, Defendants cite to *Kisting v. Gregg Appliances, Inc.*, 2016 U.S. Dist. LEXIS 139788 (E.D. Wisc. 2016), which in turn cites to other district court decisions and an unpublished opinion from the Wisconsin Court of Appeals. 2016 U.S. Dist. LEXIS 139788, at *13 (citing *Miller v. Vonage Am., Inc.*, 2015 U.S. Dist. LEXIS 308, at *5 (E.D. Wis. Jan. 5, 2015); *Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010); *Byrd v. Landowski*, 789 N.W.2d 755 (Wisc. Ct. App. 2010) (unpublished)). In *Kisting*, the Eastern District of Wisconsin found that the heightened pleading standard of Rule 9(b) applied to the WDTPA. The lack of a decision by Wisconsin Supreme Court or Sixth Circuit before this Court means that there is no controlling authority for the Court to be bound by on this issue. Plaintiff, however, submits no contrary persuasive authority because she does not contest that she is required to plead with particularity under the WDTPA. Instead, Plaintiff argues that she has complied with the heightened standard. Thus the Court assumes that claims under the WDTPA do require the heightened pleading standard of Rule 9(b), and it now turns to determine whether Plaintiff has met this standard.

Rule 9(b) requires that a party alleging a claim sounding in fraud plead the elements of the fraud with particularity. Fed. R. Civ. P. 9(b). This means the party must allege the time, place, and content of the misrepresentation; the defendant's fraudulent intent; the fraudulent scheme; and the resulting injury. *Power & Tele. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (citing Fed. R. Civ. P. 9(b); *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)). In other words, the pleadings must allege the "who, what, when, where, and

how" of the fraud. *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 489 (6th Cir. 2015) (quoting *Sanderson v. HCA - The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). "The threshold test is whether the complaint places the defendant on 'sufficient notice of the misrepresentation' . . . ." *Coffey*, 2 F.3d at 162 (quoting *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)). "The point of Civil Rule 9(b) is to prevent, not facilitate, casual allegations of fraud." *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 882 (6th Cir. 2017).

Defendants assert that Plaintiff has failed to plead with particularity and merely relies on general allegations. Plaintiff argues that she has met this burden. Plaintiff has alleged the advertised ranges for each high-speed internet plan and then went into further details about the advertisements for the Turbo Internet plan that she purchased, specifically quoting websites it held up as accessible through use of the Turbo Internet plan. Plaintiff has alleged that these advertisements were ongoing for a period of time after Defendants knew that they could not support the infrastructure needed to comply with the claims made in the advertisements since 2013. She has alleged that the advertisements were made, as advertisements usually are, with the intent to induce people into purchasing the advertised services. Plaintiff has alleged that she relied on these statements to enter into the contract for services with Defendants. And Plaintiff has alleged that she suffered a number of specific pecuniary injuries trying to procure the services that she was promised by these advertisements. While the allegations would be stronger with the exact dates that Plaintiff read these statements and then relied on them to enter into a contract with Defendants, the Court finds that these allegations are sufficient to put Defendant on notice of the particular statements she refers to. And thus, the Court agrees with Plaintiff that she has met the heightened pleading standard of Rule 9(b).

## C.  Fraud

Because of the Rule 9(b) standard requiring Plaintiff to plead fraud with particularity, Defendants again argue that Plaintiff has failed to meet this burden.  But the Court has already addressed this argument in the previous section, and common law fraud requires no allegations that were not required to support Plaintiff's WDTPA claim. Therefore, the Court comes to the same conclusion:  Plaintiff states a claim for fraud even under the higher standard of Rule 9(b).


## D.  Unjust Enrichment

Defendants argue that that Plaintiff's unjust enrichment claim must be dismissed because she also makes a claim for breach of contract.  Plaintiff concedes that the law generally supports Defendants' position but argues that it is premature to dismiss the unjust enrichment claim at this stage of the proceedings.  The Court agrees with Plaintiff.

For a court to impose liability under a theory of unjust enrichment, (1) a contract must (a) not exist between the parties or (b) be invalid or otherwise unenforceable; and (2) the defendant must have been unjustly been conferred a benefit by the plaintiff.  *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966)).  As Defendants state, "[w]here a contract exists, a party is 'precluded' from recovering under the unjust enrichment theory."  Defs.' Mot. to Dismiss Second Am. Compl., at 8, July 27, 2017, ECF No. 16 (quoting *Hayes v. Washburn*, 2007 Tenn. App. LEXIS 671, at *14 (Tenn. Ct. App. Oct. 31, 2017)).  But the Court has not yet concluded that a contract exists.  And even if the parties agree that the contract exists, which seems to be the case here, they disagree on the exact nature of the terms—namely, what Defendants promised

to provide—and, as such, the contract may or may not encompass Plaintiff's claim for unjust enrichment.  Thus, the Court finds it premature to dismiss Plaintiff's claim at this stage.

### E.       Civil Conspiracy

Defendants next challenge Plaintiff's claim of civil conspiracy on several grounds:  (1) the "intracorporate conspiracy immunity doctrine" precludes Plaintiff's claim because all Defendants are corporate affiliates; (2) Plaintiff fails to allege her civil conspiracy with specificity; and (3) Plaintiff's civil conspiracy claim fails because Plaintiff does not state a claim for an underlying tort.  Plaintiff counters that (1) the intracorporate conspiracy immunity doctrine does not clearly apply in this case, and therefore dismissal would be premature; (2) she has pleaded with sufficient particularity; and (3) her other claims satisfy the tort requirement.  The Court again agrees with Plaintiff and finds that she states a claim for civil conspiracy.

#### 1.        The Intracorporate Conspiracy Immunity Doctrine

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff."  *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) (citing *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001)).  The Tennessee Supreme Court has adopted the "intracorporate conspiracy immunity doctrine," holding that "no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment."  *Id.* at 703–04.  Defendants admit that this

adoption did not expressly exclude civil conspiracy claims against affiliated corporate entities but argue that the Court should apply the rule as such, providing ample persuasive authority from the United States Courts of Appeals for Eighth Circuit and D.C. Circuit as well as from other district courts. Plaintiff, because she also argues that Wisconsin law applies to this case, notes the requirement under Wisconsin law that the "unity of interest" between the members of the civil conspiracy be apparent on the face of the complaint. Plaintiff argues that it is not apparent on allegations of the Second Amended Complaint that all Defendants are affiliated entities. The Court makes no determination either way. At this stage of the litigation, the Court will not apply a doctrine of Tennessee law in a manner that the Tennessee courts have not yet applied it in order to dismiss a claim.

### 2.    Allegations with Some Degree of Specificity

As for the specificity of Plaintiff's allegations, Defendants argue—new to this claim—that Plaintiff failed to describe the roles of each Defendant in the alleged conspiracy or describe the concerted action with the requisite specificity.[3] Broken down into distinct elements, sustaining a claim of civil conspiracy requires allegations of "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)). While there is no requirement that

---

[3] Defendants also make the same argument for the time and place of the allegedly unlawful activity. But those required facts are not original to this claim, and the Court has already stated that it was satisfied by Plaintiff's allegations with respect to those issues and the particularity standard of Rule 9(b).

the claim be pleaded with particularity under Rule 9(b), the Tennessee Court of Appeals has required plaintiffs to plead their claims of civil conspiracy with "some degree of specificity." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citing *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002)); *Hagen v. U-Haul Co.*, 613 F. Supp. 2d 986, 996–97 (W.D. Tenn. 2009). But what this standard means is not clear. As a matter of language, there is only a small amount, if any at all, of interstitial space between particularity and specificity. *Compare* Particularity, *Black's Law Dictionary* (10th ed. 2014) (defining particularity as "[t]he quality, state, or condition of being both reasonably detailed and exact . . . . [a] minute detail; a very specific fact . . . ."), *with* Specific, *Black's Law Dictionary*, *supra* (defining specific as "[o]f, relating to, or designating a particular or defined thing . . . . [c]onformable to special requirements . . . ."). And as terms of art, the two standards—though differing in their respective origins—appear to be nearly indistinguishable in recent cases. Defendants cite a decision by another member of this Court that acknowledged that "some recognized authorities have noted that 'several federal courts have required complaints alleging some form of conspiracy to include more detail than usually is demanded of other pleadings.'" *Hagen*, 613 F. Supp. 2d at 996 (quoting Charles Alan Wright & Arthur R. Miller, 5 *Federal Practice and Procedure* § 1233 (3d ed. 2004)). In *Hagen*, the Court also cited to a decision by the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") that required plaintiffs to "ple[a]d with some degree of specificity and [stated] that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim," but the Court noted that the Sixth Circuit's case specifically involved a claim under 42 U.S.C. § 1983. *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Fraud and section 1983 claims as the underlying unlawful purpose of the conspiracy claims appear to be the source of much of the specificity standard's bite. *See id.* (quoting Wright & Miller, *supra*) ("In civil conspiracy actions this insistence upon a higher level of specificity may result from the frequent presence of fraud as a part of the plaintiff's claim . . . ."). For example, Defendants cite both *Hagen* and *Marshall v. ITT Technical Institute*, 2012 U.S. Dist. LEXIS 50843 (E.D. Tenn. Apr. 11, 2012) in support of Tennessee's requirement of specificity. In *Hagen*, as stated, this Court discussed authorities militating in favor of a specificity requirement but did not reference any Tennessee authority. *Hagen*, 613 F. Supp. 2d at 996–97. In *Marshall*, the Eastern District of Tennessee cites the decision of the Tennessee Court of Appeals (the "Court of Appeals") in *Lane v. Becker*, 334 S.W.3d 756 (Tenn. Ct. App. 2010) in support of the requirement. 2012 U.S. Dist. LEXIS 50843, at *12. In *Lane*, the Court of Appeals stated unequivocally that "[c]onspiracy claims must be pled with some degree of specificity." 334 S.W.3d at 763 (citing *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002)). In *McGee*, the Court of Appeals relied on two sources of authority: for the general proposition that "dismissal under [Tennessee Rule of Civil Procedure] 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is *totally lacking in clarity and specificity*," *421 Corp. v. Metropolitan Government of Nashville & Davidson County*, 36 S.W.3d 469, 479 (Tenn. Ct. App. 2000) (emphasis added) (citation omitted); and for the more specific rule "that conspiracy claims must be pled with *some degree of specificity*," *Haynes v. Harris*, 1999 Tenn. App. LEXIS 310, at *8 (Tenn. Ct. App. 1999). 106 S.W.3d at 64–65 (emphasis added) (citation omitted). The line of cases going back from *421 Corp.* can be traced to a Tennessee Supreme Court discussion of Tennessee's pleading requirements in *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986), wherein

the Court declared that "[t]here [wa]s a complete lack of specificity as to the nature of the 'accidental injury' for which compensation is sought." *See 421 Corp.*, 36 S.W.3d at 769 (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)); *Dobbs*, 846 S.W.2d at 273 (citing *Smith*, 712 S.W.2d at 471). Despite the common use of "specificity," this authority is not particularly helpful to fleshing out the relevant standard since the relaxed pleading standard under the Tennessee Rules of Civil Procedure is not applicable. Thus, the Court turns to the Court of Appeals's reliance on its own unpublished decision in *Haynes* for more guidance.

The full quotation that the Court of Appeals provides as the rule for civil conspiracy claims is as follows: "As to civil conspiracy, this Court has stated that 'it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *McGee*, 106 S.W.3d at 64 (quoting *Haynes*, 1999 Tenn. App. LEXIS 310, at *8). As such, it would seem that the Court must be careful to parse out any analysis under section 1983 by the Court of Appeals from its specificity analysis. In *Haynes*, the Court of Appeals provided the plaintiff's allegations as consisting only of

> Defendants violated his right of access to the court and his rights of due process and equal protection of the law due to the manner in which his petition was handled in that the Defendants conspired against him to violate his constitutional rights and that they knew or should have known about the conspiracy and did not stop it.

*Haynes*, 1999 Tenn. App. LEXIS 310, at *7. The Court of Appeals determined that the "allegations lack[ed] the requisite material facts and specificity necessary to sustain a conspiracy claim." *Id.* at *9. But the *Haynes* court was not dealing with a civil conspiracy under Tennessee law; it was confronted with claims arising under 42 U.S.C. § 1983 *and* 42 U.S.C. § 1985(2) and (3) for conspiracy to interfere with civil rights. 42 U.S.C. § 1985(2), (3); *Haynes*, 1999 Tenn.

App. LEXIS 310, at *7. *Haynes* cites to *Gutierrez*, the case this Court cited to in *Hagen*, as the source of authority for the proposition that "conspiracy claims must be pled with some degree of specificity." *Haynes*, 1999 Tenn. App. LEXIS 310, at *8 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *Hagen v. U-Haul Co.*, 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009) (citing *Gutierrez*, 826 F.2d at 1538–39)). And sure enough, the Sixth Circuit resolved federal claims of conspiracy under section 1985 not a state law civil conspiracy claim. *Gutierrez*, 826 F.2d at 1535–36. And tracing *Gutierrez*'s conspiracy pleading standard back to *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984), one finds a discussion not altogether dissimilar from the current pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Sixth Circuit affirmed the dismissal of the plaintiff's claim, reasoning that "even in its most liberal construction, plaintiff's complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory." *Jaco*, 739 F.2d at 245. Nonetheless, the Sixth Circuit's command—that *federal* conspiracy claims must be pleaded with some degree of specificity—rings clear. *Gutierrez*, 826 F.2d at 1538 (citing *Jaco*, 739 F.2d at 245). The Sixth Circuit has applied this command to not just claims section 1985 but also claims under sections 1983 and 1986 an even *Bivens* claims. *See, e.g.*, *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) (citations omitted); *Huffer v. Bogen*, 503 F. App'x 455, 461–62 (citations omitted). But there is no indication that the Sixth Circuit has found a higher burden applicable to *state* conspiracy claims under Tennessee law; in fact, the Sixth Circuit has analyzed such claims under the normal pleading standard. *See Campbell v. BNSF Ry.*, 600 F.3d 667, 677 (6th Cir. 2010).

Thus, it appears to this Court that the "some degree of specificity standard" was a misapplication of federal law to state law by the Court of Appeals in an unreported opinion that

has subsequently been picked up by Court of Appeals as "well-settled law." The Tennessee courts are of course free to draw on federal standards in modifying Tennessee common law. But of those courts, only the Tennessee Supreme Court provides controlling authority to this Court. And when a Sixth Court decision is contradictory to the decisions of the Court of Appeals, particularly when that Sixth Circuit decision that is subsequent to many of the relevant decisions by the Court of Appeals, this Court is obligated to follow the Sixth Circuit. Therefore, the Court concludes that there is no higher burden upon Plaintiff for pleading a civil conspiracy claim. Plaintiff must merely meet the requirements of *Twombley* and *Iqbal*. This standard, however, does not excuse Plaintiff of any higher burden that may be required for an underlying unlawful purpose such as, as is the case here, fraud.

Once again, to establish a claim for civil conspiracy, Plaintiff must adequately plead the following: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citation omitted). Plaintiff has identified Defendants, which are— questions surrounding the intracorporate conspiracy immunity doctrine aside—three distinct corporate entities, as participants in the conspiracy. It is "elementary" that a corporation is its own person under the law. *General Tel. Co. v. Boyd*, 343 S.W.2d 872, 875 (Tenn. 1961). Plaintiff alleged that Defendants conspired to commit fraud against her by promising high-speed internet service of a particular rate despite knowledge that their current infrastructure could not support that high-speed internet service and possessing no intent of upgrading their infrastructure. Because Plaintiff has alleged fraud, she was required to plead with particularity in setting forth her fraud claim. But the Court has already determined above that Plaintiff satisfied

this burden. Plaintiff further alleged that all Defendants were involved in the publication of the false advertisements and that she suffered injuries as a result, including pecuniary damages related to efforts to acquire the service promised. The allegations are somewhat tangled as to the first three elements, but by alleging that Defendants worked together to sell high-speed internet service, Plaintiff has satisfied the first element. By alleging that Defendants committed fraud to do so, Plaintiff has satisfied the second element. These allegations included allegations of overt acts, specifically falsely advertising high-speed internet services and contracting to provide such services, and undertaking both actions with the knowledge the high-speed internet could not be provided, thereby satisfying the third element. And finally, Plaintiff satisfies the last element by alleging the specific injuries suffered: the various costs and fees associated with trying to obtain the speed of internet she was promised as mentioned above. Thus, the Court concludes that Plaintiff has carried her burden at this stage of the litigation.

### 3. Underlying Unlawful Purpose of the Conspiracy

As stated above, the fraud claim satisfies the underlying tort or "unlawful purpose" element of the civil conspiracy claim. The Court declines to re-analyze the issue.

Finding no merit in Defendants' arguments, the Court concludes that dismissal of Plaintiff's civil conspiracy claim under Rule 12(b)(6) is improper.

### F. Injunctive Relief and Punitive Damages

Finally, Defendants challenge Plaintiff's demands for relief in the forms of injunctive relief and punitive damages on the ground that they are not independent causes of action. Defendants are correct. But while Plaintiff captions each demand as a "Count" of her Second

Amended Complaint, the Court does not believe she intended to pursue either injunctive relief or punitive damages as separate claims but as remedies for the other claims.  As such, the Court will not preclude Plaintiff from pursuing either remedy at this stage of the litigation.


**IV.      CONCLUSION**

Because the Court has found that Defendant's arguments are without merit at this stage of the litigation, the instant Motion is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE


Date:  December 29, 2017.